The Supreme Court affirmed the ruling of the Court below on Feb. 9, 1871, in the following opinion by
Agnew, J.
Whatever name may be given to the agreement of May 3rd, 1869, between Joel Kehler and Solomon Yarnell, be it sale, mortgage or bailment, it was good as between the parties to vest the *86 control of the mules in Kehler. The debt Yarnell owed to Kehler, and the release of the levy and return of his execution by the latter was sufficient consideration. But as against Yocum’s execution as administrator of Asa Yarnell, the sale or mortgage of the mules was fraudulent in law and void, no possession having been taken by Kehler sufficient to take the transaction out. of the operation of the Statute of 13th Elizabeth. It became necessary, thererore, for Kehler to attack the execution issued by Yocum on the ground of fraud, in order to escape its effect. He alleged that Solomon Yarnell procured the execution to be issued by collusion with Yocum, the administrator of his father’s estate, in order to defeat the agreement and prevent the payment of his debt to Kehler; and that this judgment, on which the execution was prosecuted was collusive and fraudulent. The intention of Solomon Yarnell to make away with his property in order to defeat the payment of Kehler’s claims is clearly shown, in regard both to the sale of all his personal estate to Morris in August, 1868, the repurchase of a part in the name of Isaac Yarnell in a few weeks afterwards, and to the measures taken by him to procure the property to be levied under Yocum’s execution. The evidence tended also to show, at least* in a prima facie degree, a fraudulent combination with him to effectuate this purpose, on the part of Mr. Yocum. Throughout all these transactions Yocum’s presence and participation are shown and it became a question exclusively for the jury, to say whether Yocum’s participation and motives were innocent or fraudulent. The evidence on the part of the plaintiff in the issue appears to implicate him strongly as conniving with Solomon Yarnell; and the jury has so found the fact. It is but justice to Mr. Yocum, however, to say that the explanation given by him of some of the seemingly pregnant proofs of fraud, tend to exculpate him from any intentional collusion in the clearly proved purpose of Yarnell. The difficulty of his case is, however, that his presence along with Solomon Yarnell at the sale of the property out of the county to Morris, when Yarnell was being pressed by his creditors, his possession of the securities taken inpayment, his handing over part of them to make the repurchase in the name of Isaac Yarnell, the apparent confederation with Yarnell on the 4th of May, 1869, and antedating the judgment note to the ¿rd of May, the same date as Yarnell’s agree *87 ment with Kehler; and the measures taken to secure a levy on the mules as soon as Kehler’s execution was stayed by means of that agreement, are facts compelling him to defend his motives and intentions against the prima facie inferences drawn from these circumstances. The proof of fraud, therefore, being the purpose of the plaintiff’s offers Nos. one and two, set forth in the first and second assignments of error, they were clearly competent evidence. The inventory and accounts of the estate of Asa Yarnell, dee’d, in the hands of Solomon Yarnell, as the administrator, and of Seth H. Yocum, as the administrator de bonis non, tended directly to disprove the existence of any debt from Solomon to his father’s estate. The explanation of Yocum that Asa Yarnell’s estate was liable for debts of Solomon Yarnell to others, was of course by way of reply and defence; the apparent combination between Sol. Yarnell and Yocum being shown by the plaintiff, the declarations of the lormer in pursuance of their conspiracy, became evidence, of course.
What has been said already, disposes also of the third and fourth assignments of error in relation to the answers of the court upon the character of the agreement of 3d May, 1869. It was clearly sufficient to give the title to the. property as between the parties to it, and as against a fraudulent execution raised up for the purpose of defeating its object, as a security and means of paying Solomon Yarnell’s debt to Kehler. The answers of the court are confined substantially to this view of its operation.
• The fifth assignment of error is groundless. "Undoubtedly if the testimony of the plaintiff" be believed (and it seems the jury did believe it) the transactions between Solomon Yarnell and Morris in the original sale, and the repurchase, were all parts of the .same continuing purpose of Yarnell to defraud Kehler of his debt, and linked themselves directly with his subsequent attempt to defeat the agreement of May 3rd, 1869. The charge of the court was discriminating and proper on this point. There was.no error in disposing of the defendants eighth point. The subject of it was properly disposed of in other parts of the charge. The sixth error is therefore not' sustained. Nor are the seventh, ninth and tenth. There was ample evidence to be submitted to the jury to justify the answers of (he court. The argument for the plaintiff *88 in error is proper enough when applied to the state of' the case as it would appear upon the evidence upon his side in the court below, and as contained in the explanation of Mr. Yocum. But it loses all force in the view of the complexion of the case as shown by Kehler’s evidence. The real and only question was the fraudulent conspiracy alleged to have existed between Yarnell and Yo-cum to defeat Kehler’s claim to the property. Hence the court ' was compelled to submit the evidence to the jury as they did, in which we discover no error.
Judgment affirmed.